## Case No. 12,742.

### In re SHEFFER.

[4 Sawy. 363: [2] 17 N. B. R. 369; 1 San Fran. Law J. 117.]

District Court, D. California. Oct. 15, 1877.

INTERVENING CREDITORS — DISMISSAL OF PROCEEDINGS.

1. When, on the return day, or adjourned day, of a rule to show cause in a case of involuntary bankruptcy, the petitioning creditors fail to appear, or to proceed, any creditors to the required amount may intervene, and pray an adjudication on the original petition. It is not necessary that such intervening creditors should constitute one-fourth in number of the creditors, or represent one-third in value of the debts due by the debtors.

2. The dismissal of proceedings in invitum is regulated by the forty-first section of the act

[1] [Reported by Hon. Henry Baldwin, Circuit Justice.]

[2] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

[of 1867 (14 Stat. 537)]. A motion to dismiss will be denied unless the requirements of the act be complied with. The court will withhold its approval whenever the granting of the motion will defeat the object, or contravene the policy of the act. Where a motion to dismiss is denied, and the petitioning creditors decline or omit to proceed in the cause, any creditor of the required amount may intervene and pray an adjudication; and this is allowed as the necessary result of the provisions of section 41, and independently of the express permission given in section 42.

In bankruptcy.

I. H. Dickinson and William Craig, for interveners.

H. F. Crane and John Haynes, for alleged bankrupt.

HOFFMAN, District Judge. On the ninth of August, 1877, a petition was filed against C. M. Sheffer, by creditors constituting the requisite number, and representing the requisite amount of his entire indebtedness.

The order to show cause was made returnable August 21. Service was duly made, and on the return day he appeared by counsel, and the hearing was, by successive adjournments, continued until September 25. On the twenty-first of September, a stipulation, signed by all the petitioning creditors, consenting that the proceedings be dismissed, was filed in the clerk's office.

On the adjourned day, September 25, a petition was presented by certain creditors, who had not united in the original petition, praying leave to intervene, and that the court proceed to adjudicate on the original petition.

This petition was opposed on the part of the bankrupt, and a motion on his behalf was made that the proceedings be dismissed, pursuant to the stipulation on file. Leave was given to either side to present affidavits, and on the day set for the hearing voluminous depositions were read, by which all the facts and circumstances of the case were made apparent. It is not denied that the petitioning creditors are sufficient in number, and the debts due them sufficient in amount to satisfy the requirements of the act.

But it appears that, since the filing of the petition, the wife of the alleged bankrupt has satisfied all their demands, taken an assignment of them to herself, and procured from the creditors the stipulation on file.

It also appears that, shortly before the commencement of the proceedings, the alleged bankrupt conveyed away all his visible property, receiving in exchange therefor some lands in Illinois, the deed for which he caused to be made out in the name of his wife. The pretext for this transaction was an indebtedness said to be due his wife for previous advances made to him out of her separate estate. It is charged by the intervening creditors that the transaction was fraudulent in fact, and the conveyance without consideration. The truth of this allega-

tion cannot now be ascertained. But it is evident that the debtor has at least committed a fraud upon the act by giving his wife an unlawful preference.

The creditors who intervene are the vendors of the identical property disposed of by the debtor, the proceeds or representative of which have been conveyed to his wife. These creditors still hold the notes, or substitutes for them, given for the purchase-money. But since the filing of the petition in bankruptcy the debtor has commenced a suit in the Fifteenth district court in San Francisco, in which he alleges that the notes were obtained by fraud and misrepresentation, and he prays that they may be decreed to be delivered up to be canceled, and also that damages may be awarded him.

To complete the history of the case, it may be added that a warrant was issued, on the application of the petitioning creditors, for the arrest of the respondent as an absconding debtor. He was accordingly arrested at Sacramento and brought back to San Francisco, where he gave bonds and was liberated.

The forty-second section (section 5026, Rev. St.) of the bankrupt act provides that, "if the petitioning creditors shall not appear and proceed on the return-day, or adjourned-day, the court may, upon the petition of any other creditor to the required amount. proceed to adjudicate on such petition. without requiring a new service or publication of notice to the debtor." The words "such petition," in this section, evidently refer to the petition of the original petitioning creditor; and the act contemplates that if he fails to appear. or to proceed on the return-day, or the adjourned-day, any other creditor may intervene, and on his application the court may proceed to an adjudication. This right cannot be cut off or defeated by any action of the court, or arrangement between the petitioning creditors and the bankrupt. In re Lacey [Case No. 7,965], where the motives and policy of the enactment are very clearly explained by Mr. J. Woodruff.

In the case at bar, no order of dismissal was obtained on the filing of the stipulation by the petitioning creditors. If any such order had been made it would have been erroneous and void. The intervening creditors have regularly appeared on the "adjourned-day," and are therefore entitled to all the rights conferred by the section which has been cited.

It is urged, however. that, in view of the late amendments to the act, the words "any other creditor to the required amount" must be construed to mean "any other creditors constituting one-fourth in number of all the creditors. and representing one-third of the aggregate of all the debts due by the bankrupt;" and this on the ground that it would be unreasonable to permit a creditor to continue and keep alive a proceeding which he would have been incompetent to originate.

But this view is more plausible than sound.

The language of the section is explicit. It confers the right to intervene upon any other creditor "to the required amount," i. e., to the amount of $250. It has been suffered to stand notwithstanding the adoption of the amendment, and it is the existing law. The court has no right to disregard so clearly expressed a provision of law, and to substitute for it a provision essentially different, upon a conjecture that the section may have been overlooked, and that it would have been modified if the attention of congress had been called to it.

Whether this section was overlooked or advisedly suffered to stand we cannot know. But it may well be doubted whether sound policy would have permitted its alteration. The motives which led to the adoption of the amendment which requires what, for convenience, we may call the quorum of creditors, to unite in the petition in involuntary cases, are well known. It was thought expedient so far to mitigate the supposed harshness of the law as to deprive any single creditor or creditors representing in number or amounts due them an insignificant proportion of the body of the creditors, or of the total indebtedness of the debtor, from throwing the latter into bankruptcy contrary to the wishes and, perhaps, against the interests of their fellows. As the law stood, a single creditor to the amount of $250 could, from caprice or malice, precipitate the ruin of any one who might be in a condition of technical insolvency. and convert what might have proved a temporary embarrassment into an irremediable catastrophe. The concurrence, therefore, of a certain quorum of the creditors was required. But when that quorum has concurred, and the court has become possessed of the cause, the object of the amendment has been attained. undue severity or oppression has been prevented, and the rights of the other creditors have attached. There seems to be no reason why those rights should be any less or different from those possessed by them under the original act. The failure on the part of the petitioning creditors to appear or to proceed cannot be known until it occurs. In most cases it will not be anticipated. A single creditor may provide for its occurrence by attending at the return-day or adjourned-day with his own petition; but to oblige him to arm himself with a petition signed by the quorum of all the creditors is to subject him to an unreasonable. and what may prove an unnecessary inconvenience. After considerable observation of the operation of the act, from the date of its passage, I have no hesitation in saying that, if called on as a legislator to adopt. as an amendment to the forty-second section, the provisions I am asked as a judge to interpolate into it, my vote would be in the negative. I am, therefore, of the opinion that, under the provisions of the forty-second section. it is the duty of the court to proceed to adjudicate on the original peti-

tion upon the application of the creditors who have intervened.

A motion is also made, on behalf of the bankrupt, that the proceedings be dismissed. This motion is based on the stipulation and consent filed by the petitioning creditors who constitute one-third in value and one-fourth in amount of all the creditors. A consideration of the merits of this motion will confirm the conclusion already reached as to the application for leave to intervene. A proceeding in bankruptcy in invitum differs in many important respects from an ordinary suit inter partes. We have seen that, under the provisions of the forty-second section, it may be continued without the consent and against the wishes of the original parties.

It can be discontinued only by order of the court, on special application (In re Buchanan [Case No. 2,073]); and permission to withdraw will be withheld even in cases not strictly within the forty-second section, where the object and policy of the act would otherwise be defeated (In re Mendenhall [Id. 9.424]).

A petitioning creditor may proceed to adjudication, notwithstanding a tender of the full amount of his claim and costs. And it is ordinarily his duty to do so; for an acceptance of the tender would, in cases of actual insolvency, be a preference and a fraud upon the other creditors. In re Sheehan [Case No. 12,738]; In re Williams [Id. 17,703].

So, under the late amendments, it has been held that, where creditors have, in good faith, joined in a petition in bankruptcy, they will not be permitted to withdraw and have the proceedings dismissed as to them, and thus break up the quorum of creditors; and this for the very sufficient reason that such a practice "would lead to underhand and secret negotiations between the debtor and a portion of his creditors, and be a strong incentive for showing favors to a few creditors at the expense of the many." Per Mr. J. Blodgett, in Re Heffron [Case No. 6,321]; In re Sargent [Id. 12,361]. But we are not left to the guidance of general considerations drawn from the policy and purposes of the act and the nature of the proceedings. It contains explicit provisions regulating the dismissal of proceedings in invitum. The forty-first section, as amended, provides that all proceedings in bankruptcy may be discontinued on reasonable notice and hearing, with the approval of the court, and upon the assent, in writing, of such debtor, and not less than one-half of his creditors in number and amount, or, in case all the creditors and such debtor assent thereto, such discontinuance shall be ordered and entered.

The cases in which a discontinuance can be entered are thus clearly defined by the act. The assent of the debtor is in all cases necessary, and if, in addition, the assent of all the creditors be obtained it is entered as of course. It may also be entered upon the assent of the debtor and one-half of the cred-

itors in number and amount, but in that case only with the approval of the court, upon reasonable notice and hearing. These provisions are absolutely inconsistent with the position assumed by counsel, that the petitioning creditors have, in all cases, the right, with the assent of the debtor, and without the approval of the court, to summarily put an end to the proceedings. It is difficult to imagine a case where the duty of the court to withhold its approval would be more clear than in the case at bar. The wife of the debtor, who has received a conveyance of the proceeds of all her husband's property, certainly as a preferred creditor, and perhaps without any consideration whatever, satisfies the claims of the petitioning creditors, and asks, in the name of the husband, the aid and approval of the court to enable her to consummate the fraud by dismissing the only proceeding in which that fraud can be exposed and defeated, and this against the protest of other creditors, who claim to be the unpaid vendors of the very property the proceeds of which have been conveyed to her. But one answer can be given to such an application.

An additional reason for withholding the approval of the court may be found in the provisions of the twenty-second section of the act. By that section it is provided that "to entitle a claimant against the estate of a bankrupt to have his demand allowed, it must be verified by a deposition, * * * setting forth * * that the claim was not procured for the purpose of influencing the proceeding." With regard to this provision Mr. J. Lowell observes: "I do not know what it means. I see nothing objectionable, in itself, in a person's buying a debt for the sake of influencing the proceedings, except it be in some such way as has been already referred to, that is, to vote for the bankrupt's interest without regard to those of his creditors." Ex parte Jewett [Case No. 7,303]. If the clause has any practical operation whatever, it would seem that it ought to apply to a case where the claim is brought for the express purpose of defeating the proceedings in bankruptcy and securing the benefit of a fraudulent preference.

Whether the wife of the debtor will be deprived of the right to prove the claims she has purchased, by reason of her inability to take the oath required by the statute, it is unnecessary now to determine. It is at least clear that neither she nor the debtor has any right to ask the approval or assistance of the court in carrying out their design. But even if the approval of the court could be obtained, under the circumstances of this case, the debtor is not in a position to ask it. He has not presented to the court "the assent in writing of one-half of his creditors, in number and amount," as required by the act.

The motion to dismiss must therefore be denied, and the cause remains in court. It would seem to follow that any other creditor

must be allowed to continue the proceeding, and this as the necessary result of the provisions of the forty-first section, and independently of the express permission given by section 42. The fact that the debtor has, since the commencement of the proceedings, filed a bill in a state court, to procure the notes held by the intervening creditors, to be delivered up to be canceled, and to recover damages for their alleged fraudulent representations, can have no effect on the proceedings in bankruptcy. By the filing of the petition the court acquired jurisdiction over the cause as a case in bankruptcy. No action of the debtor could thereafter impede this court in the discharge of one of its chief functions under the act, viz.: "The determination of all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy."

The motion to dismiss is denied, and the application of the intervening creditors is granted—unless the bankrupt shall, in an answer, traverse the allegation that they are creditors, in which case the matter will be referred to the register to take proofs and report.